IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ERIC WADE and YVETTE TOY**                                                          **PLAINTIFFS**

**V.**            **No. 4:24-cv-00022-MPM-DAS**

**GREENVILLE POLICE DEPARTMENT**                                       **DEFENDANT**

**MEMORANDUM OPINION**

This cause comes before the Court on Defendant Greenville Police Department's ("GPD") Motion to Dismiss [9] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court has reviewed the Motion and is now prepared to rule.

**FACTS AND PROCEDURAL HISTORY**

This matter arises out of a neighborhood dispute turned violent. On September 14, 2022, Officer Shardae Jung ("Officer Jung") of the Greenville Police Department was dispatched to Eric Wade and Yvette Toy's residence located at 1430 Irby Street in reference to a neighborhood problem. Mr. Wade was complaining of a truck parked across the street from his residence. He believed the vehicle was parked illegally.

At the time of this incident, Officer Jung lived across the street from Mr. Wade, and the truck in question belonged to Officer Jung's landlord. When Officer Jung informed Mr. Wade that the truck was parked legally, Mr. Wade became irate and started threatening to bust out windows. At that time, Officer Jung called for assistance, and Sergeant Chris Surf ("Sergeant Surf") and Officer Jay Burden ("Officer Burden") were dispatched to the scene.

Mr. Wade was no stranger to local officers, particularly Officer Jung. On one occasion months prior, Mr. Wade and Officer Jung got into a disagreement over the placement of a trash

1

can. Mr. Wade claims that Officer Jung threatened to "shoot [Mrs. Toy] with an AK47" and "call the police and tell them that [Mr. Wade] threaten[ed] to burn [Officer Jung's] house down." According to Officer Jung and Officer Burden, all of Mr. Wade's neighbors have had issues with him complaining of the positions of garbage cans and where people park on the city street. Mr. Wade has had altercations with several of these neighbors. Further, the officers claim Mr. Wade has a history of being highly intoxicated and irate; he often refuses to listen and "displays many mental instabilities of outward anger and verbal language outbursts." At the time of this incident, Officer Jung was pursuing charges against Mr. Wade for allegedly threatening her on a previous occasion.

When Sergeant Surf and Officer Burden arrived at the scene, they reiterated to Mr. Wade that there was nothing they could do because the neighbor's car was parked legally. According to Mr. Wade, he and Officer Jung then got into a confrontation. In a statement by Mr. Wade, dated September 23, 2022, he writes:

> [Officer] Jung told her supervisor that she was going to get my wife for assault charges, my wife then asks why since she hasn't done anything. [Officer] Jung then asked the supervisor did she have charges against me and said no. [Officer Jung] proceeds to call us 'the slow couple.' . . . I told [Officer Jung's] supervisor that I was going to sue them, and he said go ahead. [Officer] Jung called her family to assault us again in front of her supervisor who was out there. . . . He didn't try to stop her from doing it.

As the officers were leaving the scene, a gray vehicle pulled up and Officer Jung's brother, Jarvis Jung, and mother, Monica Norman, exited the vehicle. An altercation between Mr. Jarvis, Ms. Norman, Mr. Wade, and Mrs. Toy ensued.

Mr. Jarvis Jung attacked Mr. Wade, striking him several times before Officer Burden was able to separate the men and place Mr. Jarvis Jung under arrest. While handcuffed, Mr. Jarvis Jung spit in Mrs. Toy's face. Afterwards, Mr. Wade tried attacking Mr. Jarvis Jung with a long wooden stick but was intervened by Officer Jung and Sergeant Surf. The officers pulled out their tasers and

2

ordered Mr. Wade to get on the ground and place his hands behind his back. Mr. Wade complied and was temporarily handcuffed. Mr. Jarvis Jung was arrested and charged with simple assault.

Following the altercation, the officers told Mr. Wade and Mrs. Toy that they could go to the police station and press charges against Mr. Jarvis Jung and Ms. Norman if they wished. Upon arrival, it was discovered that Mrs. Toy had an outstanding warrant for domestic violence, and she was subsequently arrested.

On May 2, 2023, Mr. Wade and Mrs. Toy filed a lawsuit against the GPD in the Circuit Court of Washington County, Mississippi where it remains pending.[1] The GPD removed the case to the United States District Court for the Northern District of Mississippi, where it was remanded for lack of subject matter jurisdiction on October 31, 2023.[2] On February 27, 2024, Mr. Wade and Mrs. Toy filed this Complaint, seeking recovery against the GPD under both state and federal law.

This Complaint is virtually identical to the one previously filed in state court except that it includes a statement by Mr. Wade, dated February 12, 2024, a statement by Mr. Wade and Mrs. Toy, dated September 23, 2022, and a brief description of the parties' injuries. Like the complaint filed in state court, this Complaint asserts claims of "misconduct, assault and battery, false charges, and violating [Mr. Wade and Mrs. Toy's] rights on September 14, 2022." In his statement attached to the Complaint, Mr. Wade further claims the GPD is "withholding federal funds" and "covering up crimes and committing fraud."

The GPD subsequently filed this Motion to Dismiss arguing that Mr. Wade and Mrs. Toy failed to plead a plausible constitutional violation; the Mississippi Tort Claims Act bars all state claims; and abstention, claim-splitting, and judicial economy further compel dismissal.

---

[1] *See* Case 76CO1:23-cv-00111.
[2] *See* Case 4:23-cv-00111-MPM-JMV, Doc. 1, 14.

3

**STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion, the plaintiff's complaint must assert "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim meets the standard of "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is not necessary that a complaint contain detailed factual allegations, but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555). "Dismissal is proper if the complaint fails to allege a required element of the offense." *Bazan v. White*, 275 F. App'x. 312, 312-13 (5th Cir. 2008) (citing *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995)).

Upon reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must limit its examination to the complaint, documents attached to the complaint, and documents accompanying the motion to dismiss that reference the complaint. *Lone Star Fund V (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must liberally construe the complaint in the light most favorable to Plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005). Federal Rule of Civil Procedure 8(a)(2) requires that pleadings contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard does not require "detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 677–78 (citing *Twombly*, 550 U.S. at 544).

It is the duty of the trial judge to hold pro se complaints to less stringent standards than proper pleadings drafted by lawyers. *Hepperle v. Johnston*, 544 F.2d 201, 202 (5th Cir. 1976). The

4

Fifth Circuit has held that "[g]enerally a district court errs in dismissing a pro se complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). However, "[t]he district court may dismiss an action on its own motion under Rule 12(b)(6) 'as long as the procedure employed is fair.'" *Id*. In *Bazrowx*, the Fifth Circuit found that "the district court erred in failing to give Appellant notice of the court's intention to dismiss his suit or an opportunity to amend his complaint[,]" but held that "[s]uch error may be ameliorated . . . if the plaintiff has alleged his best case, or if the dismissal was without prejudice." *Id*. (footnote omitted). The Fifth Circuit has clarified that a court can consider a plaintiff to have asserted his best case when the plaintiff has had a "fair opportunity to make out [his] case." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

## ANALYSIS

According to the Complaint, Mr. Wade and Mrs. Toy "are suing the Greenville Police Department for misconduct, assault and battery, false charges, and violating [their] rights on September 14, 2022." Although the Complaint makes no reference to either the U.S. Constitution or 42 U.S.C. § 1983, it presumably purports to allege two Fourth Amendment violations as the basis of this § 1983 action – use of excessive force and wrongful arrest. The Court will address these claims first.

### A. Federal Claims

42 U.S.C. § 1983 allows individuals to seek redress when someone acting under the authority of state law "subjects" them to a deprivation of rights or "causes" them "to be subjected" to a deprivation of rights. Generally, a plaintiff asserting a claim under 42 U.S.C. § 1983 must (1) allege the deprivation of a right secured by the Constitution or federal law and (2) demonstrate that

5

the alleged violation was committed by a person acting under color of state law. *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

In actions against municipalities, however, this standard differs. A municipality may only be held liable under § 1983 if "the governmental body itself subjects [that] person to a deprivation of rights or causes a person to be subjected to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation marks omitted) (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 692 (1978)). Because such entities are only responsible for their own illegal acts, they cannot be vicariously liable for their employees' actions. *Connick,* 563 U.S. at 60; *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986); *Monell*, 436 U.S. at 698.

To establish constitutional liability under *Monell*, a plaintiff must allege that (1) a constitutional violation occurred, and (2) an official policy or custom was the "moving force" behind the violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001); *Monell*, 436 U.S. at 694.

The Court first considers Plaintiffs' excessive force claim against the GPD. The Complaint references two instances where force was used against Mr. Wade and Mrs. Toy – when Mr. Wade was struck in the face and when Mrs. Toy was spat on. Both acts, however, were committed by Mr. Jarvis Jung, not Officers Jung, Surf, or Burden. As noted by the GPD in its Memorandum in Support of Motion to Dismiss [10], the incident reports make clear that none of the officers utilized *any* force against Mr. Wade and Mrs. Toy, much less any unlawful force.

In filing this action, the Plaintiffs essentially seek to hold the GPD liable for Mr. Jarvis Jung's actions. The Constitution, however, only protects against misconduct by government actors; its protections do not extend to acts by private citizens, such as Mr. Jarvis Jung.[3] Mr. Wade and

---

[3] In some cases, private citizens, such as Mr. Jarvis Jung, may be held liable under § 1983 when they conspire with or act in concert with state actors. *Priester v. Lowndes Cty.*, 354 F.3d 414, 420 (5th Cir. 2004); *Mylett v. Jeane*, 879

6

Mrs. Toy have made no allegations that Mr. Jarvis Jung was acting under color of state law and thus, cannot establish the Fourth Amendment is even implicated, let alone violated. *See Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003) ("The under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful."). Even assuming a constitutional violation did occur, Mr. Wade and Mrs. Toy fail to establish that an official GPD policy or custom was the "moving force" behind the violation. *Piotrowski*, 237 F.3d at 579. For these reasons, Mr. Wade and Mrs. Toy's claim for excessive force should be dismissed.

The Court now turns to Plaintiffs' wrongful arrest claim. The Fourth Amendment "prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). So, to establish that the GPD violated Mrs. Toy's Fourth Amendment right by arresting her, she must show that she was arrested without probable cause. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Probable cause exists when the totality of the facts and circumstances known by the officer at the moment of the arrest are "sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). "The probable cause can be for any crime, not just the one the officer subjectively considered at the time." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017).

---

F.2d 1272, 1275 (5th Cir. 1989). Assuming, arguendo, that Mr. Jarvis Jung was a defendant in this lawsuit, for him to be liable for the actions committed against Mr. Wade and Mrs. Toy, they must have alleged: (1) an agreement between Mr. Jarvis Jung and the GPD to commit an illegal act and (2) a deprivation of constitutional rights. *Priester*, 354 at 420; *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Mr. Wade alleges that Officer Jung "called her family to assault [Mr. Wade and Mrs. Toy]" on September 14, 2022. This Court must accept Mr. Wade and Mrs. Toy's well-pleaded facts as true, and at this stage in the proceedings, the Plaintiffs must only plead a plausible claim that there was a violation of their constitutional rights to which they are entitled relief. However, the allegations are insufficient. *See*, *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986). Moreover, as stated above, there has been no constitutional violation.

7

Officers had probable cause to arrest Mrs. Toy because she had an outstanding warrant for domestic violence. Therefore, Mrs. Toy's arrest was lawful and did not violate her Fourth Amendment rights. Mrs. Toy claims Officer Jung "set [her] up to get arrested" but offers nothing in support of this claim. Regardless, Officer Jung's intentions are irrelevant to establish probable cause. In light of the foregoing, Plaintiffs false arrest claim also fails and should be dismissed.

### B. State Claims

In a case such as this one, where all federal claims have been dismissed, 28 U.S.C. § 1367(c)(3) grants this Court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. In the Fifth Circuit, the "general rule" is that "courts should decline supplemental jurisdiction [over state law claims] when all federal claims are dismissed or otherwise eliminated from a case." *Certain Underwriters at Lloyd's v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006). In concluding that it should follow the general rule in this case, this Court notes that § 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The four § 1367(c) factors are thus listed in the disjunctive, which means that only one of them needs to be met in order to grant a district court discretion to decline to exercise supplemental jurisdiction. Federal law also requires consideration of the "common law factors [of] judicial economy, convenience, fairness, and comity" in deciding whether to exercise supplemental jurisdiction. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "When balance of these factors indicates that case properly belongs in state court, federal court should decline exercise of jurisdiction by dismissing case without prejudice." *Id*.

8

In the Court's view, the statutory factors, as well as the *Cohill* considerations, support declining to exercise supplemental jurisdiction in this case. For the sake of completeness, however, the Court will briefly address Plaintiffs' state claims and the GPD's defenses.

Mr. Wade and Mrs. Toy assert state claims for false arrest, assault, and battery. The GPD offers several defenses, most of which are grounded in the Mississippi Tort Claims Act ("MTCA"). As a general rule, "the MTCA is the exclusive state remedy against a governmental entity and its employees for tortious acts or omissions which give rise to civil liability." *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 594 (5th Cir. 2006) (citing Miss. Code Ann. § 11-46-7). Under the MTCA, a governmental entity may be held liable for torts committed by their employees "while acting within the course and scope of their employment." Miss. Code Ann. § 11-46-5(a). Conduct constituting "fraud, malice, libel, slander, defamation, or any criminal offense other than traffic violations[,]" however, is considered outside the course and scope of one's employment. Miss. Code Ann. § 11-46-7.

Stated simply, where a claim was committed outside of an employee's scope of employment, it falls outside of the MTCA. *See* Miss. Code Ann. § 11-46-5; *see also Univ. of Mississippi Med. Ctr. v. Oliver*, 235 So. 3d 75, 82 (Miss. 2017). Thus, in such cases the government retains its sovereign immunity, and the legal action must proceed against the employee individually. *Id.*

Here, all of Mr. Wade and Mrs. Toy's claims constitute some form of malice or criminal offense, and thus by their very nature, allege the officers were not acting within the course and scope of their employment. *See Renfroe v. Parker*, 374 So. 3d 1234, 1242 (Miss. Ct. App.), *reh'g denied* (Aug. 22, 2023), *cert. denied*, 375 So. 3d 671 (Miss. 2023) ("the MTCA does not apply to claims for intentional infliction of emotional distress, assault, and battery against governmental

9

employees in their official capacity . . . ."); *Ellis v. Lowndes Cnty.*, No. 1:16-CV-177-DMB-DAS, 2017 WL 6045440, at *12 (N.D. Miss. Dec. 6, 2017) (concluding that "malice is an element of false arrest and that, therefore, the false arrest claims brought against the County Defendants must be dismissed."). Accordingly, these claims must be dismissed because the alleged acts fall outside the purview of the MTCA.

Providing another basis for dismissal of all claims, the GPD is not a proper defendant. The capacity of a police department to be sued is governed by state law. Fed. R. Civ. P. 17(b)(3). The Mississippi Code authorizes suit against "[e]very municipality of this state." Miss. Code Ann. § 21-17-1(1). The Mississippi Supreme Court and federal courts in this district, however, have held that it does not authorize suit against a municipality's police department. *E.g.*, *Brown v. Thompson*, 927 So.2d 733, 737 (Miss. 2006) (holding that a sheriff's department does not enjoy a separate legal existence apart from the county in which it operates and is therefore not subject to suit); *Jackson v. City of Gulfport*, 2017 WL 651956, *2 (S.D. Miss. Feb. 16, 2017) ("[A] police department is not a separate legal entity that may be sued. Rather, it is an extension of the city."); *Stovall v. City of Hattiesburg*, 2010 WL 1908313, at *1-2 (S.D. Miss. May 17, 2010) (dismissing the Hattiesburg Police Department as a defendant because the City of Hattiesburg was the appropriate defendant). Therefore, the Plaintiffs' claims fail because Mississippi law does not authorize suit against the GPD.

## CONCLUSION

For the reasons stated above,

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss [9] is **GRANTED**. Plaintiffs federal law claims are **DISMISSED WITH PREJUDICE**, and Plaintiffs state law claims are **DISMISSED WITHOUT PREJUDICE**.

A separate judgment in accordance with this order will be entered on this date.

SO ORDERED this the 18th day of October, 2024.

                                        /s/Michael P. Mills
                                        UNITED STATES DISTRICT JUDGE
                                        NORTHERN DISTRICT OF MISSISSIPPI